UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: UNASSIGNED

———————————————————————)
                                                     )
BYD AMERICA, LLC, BYD ENERGY LLC,      )
BYD COACH & BUS LLC, BYD MOTORS LLC, )
AND GLOBAL HEALTHCARE PRODUCT          )
SOLUTIONS, LLC                                 )
                                                     )
         Plaintiffs,                              )
                                                     )
         v                                       )        Ct. No. 20-03685
                                                     )
UNITED STATES OF AMERICA;               )
OFFICE OF THE UNITED STATES TRADE       )
REPRESENTATIVE; ROBERT E. LIGHTHIZER, )
U.S. TRADE REPRESENTATIVE; U.S.         )
CUSTOMS & BORDER PROTECTION; MARK       )
A. MORGAN, U.S. CUSTOMS & BORDER        )
PROTECTION ACTING COMMISSIONER,         )
                                                     )
         Defendants.                             )
———————————————————————)

## AMENDED COMPLAINT

Plaintiffs BYD America, LLC, BYD Energy LLC, BYD Coach & Bus LLC, BYD

Motors LLC and Global Healthcare Product Solutions, LLC (collectively, "BYD" or

"Plaintiffs") by and through their attorneys, allege and state as follows:

1.    This action concerns Defendants' prosecution of extensive Section 301 tariffs

impacting over $500 billion in imports from the People's Republic of China ("China"). This

Complaint focuses on Defendants' unlawful imposition of a third round of tariffs on products

covered by "List 3" And "List 4." *Notice of Modification of Section 301 Action: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

83 Fed. Reg. 47,974 (USTR Sept. 21, 2018); *Notice of Modification of Section 301 Action:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (USTR Aug. 20, 2019).

2.      The Trade Act of 1974 ("Trade Act") did not confer authority on Defendants to litigate a years-long and still ongoing trade war between the United States and China.  The Office of the United States Trade Representative ("USTR") conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411), which was initiated on August 13, 2017.  *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (USTR Aug. 24, 2017).  Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any, within 12 months after initiation of that investigation.  But, USTR failed to issue List 3 (or subsequent List 4) within that window, which closed on August 13, 2018.  USTR may not fall back on its "modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) to salvage List 3 or List 4.  Section 307 of the Trade Act does not permit USTR to expand the imposition of tariffs to other imports from China outside of its original Section 301 investigation of China's intellectual property policies and practices.   Yet Defendants promulgated the List 3 and List 4 tariffs in response to China's retaliatory duties and other unrelated issues in September 2018, rather than in furtherance of their initial investigation.  And even if USTR deems the existing tariffs "no longer appropriate," as it also did here, the Trade Act does not permit USTR to expand those actions.

3.      Defendants also violated the Administrative Procedure Act ("APA") when they arbitrarily implemented the List 3 and List 4 tariff actions.  USTR (1) failed to provide sufficient opportunity for comment, *e.g.*, requiring interested parties to submit affirmative *and* rebuttal

comments *on the same day*; (2) failed to consider relevant factors when making its decision, *e.g.*, undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made. Despite receiving over 6,000 comments, USTR failed to address these comments and explain how they shaped its final promulgation of List 3 and List 4. USTR's actions do not meet the procedural requirements of the APA.

4.     The List 3 and 4A additional duties were unlawful and unconstitutional because (a) only Congress is authorized to enact legislation creating taxes, which with respect to the List 3 and 4A additional duties Congress did not do, and (b) they were enacted contrary to the Fifth Amendment guarantee to due process of law.

5.     The Court should strike down Defendants' actions as violations of the Trade Act, APA, and United States Constitution, as well as order Defendants to refund (with interest) any tariffs paid by Plaintiff pursuant to List 3 and List 4.

## JURISDICTION

6.     The Court holds subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

7.     Plaintiff BYD America, LLC ("BYD America") is an American company incorporated in Delaware with headquarters in Los Angeles, California. BYD America imports,

sells, and distributes a wide range of products manufactured by affiliated companies in China, including photovoltaics, energy products, parts and components.

8.    Plaintiff BYD Energy LLC ("BYD Energy") is an American company incorporated in California with headquarters in Los Angeles, California.  BYD Energy imports, sells, and distributes energy storage products and systems and related parts and components, as well as other products manufactured in China.

9.    Plaintiff BYD Coach & Bus LLC ("BYD Coach & Bus") is incorporated in California with headquarters in Los Angeles, California.  BYD Coach & Bus, sells, assembles in the United States, and distributes electrical coaches and buses, parts and components, and other products.

10.    Plaintiff BYD Motors LLC ("BYD Motors") is an American company incorporated in Delaware and headquartered in Los Angeles, California.  Plaintiff sells and distributes, assembles in the United States, and distributes electrical vehicles, parts and components, and other products.

11.    Plaintiff Global Healthcare Product Solutions LLC ("GHPS") is an American company incorporated in Delaware and headquartered in Los Angeles, California.  Plaintiff sells and distributes healthcare products manufactured in China, including surgical masks, respirators, hand sanitizers, and other products.

12.    Plaintiffs BYD America, BYD Energy, BYD Coach & Bus, BYD Motors, and GHPS made numerous entries and paid applicable tariffs for the products identified in Attachment 1 to this submission which are subject to the tariffs under List 3 and List 4A.

13.    Defendant United States of America received payment of the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

14.    USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4A.

15.    Ambassador Robert Lighthizer currently holds the position of the U.S. Trade Representative and serves as the director of the USTR.  In these capacities, he made numerous decisions regarding List 3 and List 4A.

16.    Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects tariffs and duties on imports. CBP collected payments made by Plaintiffs to account for the tariffs imposed by USTR under List 3 and List 4A.

17.    Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of tariffs paid by Plaintiffs under List 3 and List 4A.

## STANDING

18.    Plaintiffs have standing to sue because they are "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").  Tariffs imposed by Defendants pursuant to List 3 and List 4A adversely affected and aggrieved Plaintiffs because they were required to pay these unlawful tariffs.

## TIMELINESS OF THE ACTION

19.    A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

20.     The instant action contests action taken by Defendants that resulted in List 3. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (USTR Sept. 21, 2018). Plaintiffs' claims accrued at the earliest when the tariffs as set forth in List 3 became effective for Plaintiffs' imports. *Id.* Plaintiffs have therefore timely filed this action with respect to any entries made at the latest on or after September 25, 2018 for which List 3 or List 4A duties have been applied.

21.     This Amended Complaint is being filed within 21 days of service of the Complaint, making it a timely amended pleading "as a matter of course" pursuant to U.S. Court of International Trade Rule 15(a)(1).

## RELEVANT LAW

22.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices.   19 U.S.C. § 2411(b).   If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice.  *Id.* § 2411(b), (c)(1)(B).

23.     Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation.  *Id.* at § 2414(a)(1)(B), (2)(B).

24.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."  *Id.* § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I.    USTR's Investigation

25.    On August 14, 2017, the President directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Executive Office of the President Aug. 17, 2017).  According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation."  *Id.*

26.    Four days later, on August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under {Section 301(b) of} the Trade Act."  *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (USTR Aug. 24, 2017).

27.    Seven months later, on March 22, 2018, USTR released a report announcing the results of its investigation.  USTR, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at*

https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.  USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17. USTR based its findings specifically on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171.

28.    On the same date, USTR published a "Fact Sheet" stating that "{a}n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year."  USTR, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.  USTR also indicated that, consistent with a directive from the President, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies."  *Id.*; *see also Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

II.    **Lists 1 & 2**

29.    Between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by the so-called Lists 1 and 2.

30.    On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (USTR Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907. USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." USTR, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

31.    On June 20, 2018, USTR published its final list of products subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property, and Innovation*, 83 Fed. Reg. 28,710 (USTR Jun. 20, 2018).  USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

32.    At the same time that it finalized List 1, USTR announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of {the} $50 billion trade action" grounded in its Section 301 investigation. *Id.* at 28,712.    USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711–12.

33.    On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem* in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823–24 (USTR Aug. 16, 2018). Thus, USTR's action through lists 1 ($34 billion) and 2 ($16 billion were designed to impact $50 billion in trade, an amount "commensurate with" the amount of harm inflicted by China's policies pursuant to the USTR's Section 301 investigation.  USTR, Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products (Apr. 3, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

## III. List 3 and List 4

34.    Tensions between the governments of China and the United States escalated dramatically in March 2018 following the announcements of List 1 and List 2.  In the months that followed, Defendants greatly expanded the scope of the tariffs imposed under Section 301 of the

Trade Act to cover imports worth more than $500 billion—ten times the amount it had deemed "commensurate" with the findings of USTR's original investigation.  Defendants did so for reasons outside of its initial investigation, namely China's retaliatory countermeasures and other grievances related to China's role on the world stage per the direction of the President.

### A.    List 3

35.    Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory tariffs on the same value of imports from the United States.  In response, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation."  The White House, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

36.    When USTR finalized List 1 in mid-June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States.  *See e.g.*, Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, The Hill (Jun. 15, 2018), *available at* http://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods  ("The  president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.'").

37.    President Trump then formally directed USTR on June 18, 2018 to consider whether the United States should impose additional duties on products from China with an

estimated trade value of $200 billion—despite USTR having not yet implemented List 1 or List 2. The President acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated this decision. The White House, *Statement from the President Regarding Trade with China* (Jun. 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("China has determined that it will raise tariffs on $50 billion worth of United States exports. . . . This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

38.    USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures. USTR, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

39.    China then retaliated against List 1 and List 2 by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

40.    About a week after China imposed its first round of retaliatory tariffs, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on {a list of} products {from} China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (USTR Jul. 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under {Section 301(b)} of this title and is no longer appropriate." *Id.* at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)). USTR set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id.* at 33,608.

41.    In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id.* at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.* (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). USTR did not identify any increased

burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had originally investigated. *See id.*

42.     Further, USTR's press statements stated that China's retaliatory duties motivated its proposed action.  Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice."  USTR, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Jul. 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

43.     That same day, the President suggested that the United States' trade imbalance with China supported the decision.  @realDonaldTrump, Twitter (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209.  Over the following weeks, the President also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g.*, @realDonaldTrump, Twitter (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump, Twitter (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonaldTrump/status/1020290163933630464; @realDonaldTrump, Twitter (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074252999225344.

44.     Following President Trump's statements, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*.  Rather than addressing the practices that USTR investigated pursuant to Section

301 of the Trade Act, he stated that China "{r}egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." USTR, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

45.     Shortly thereafter, USTR formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (USTR Aug. 7, 2018). USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* USTR, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available            at*            https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

46.     At the same time, USTR moved up the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both *initial and rebuttal* comments from the public. *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (USTR Aug. 7, 2018). That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite those obstacles,

approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id.*

47.    Just eleven days after USTR received comments from the public, the President announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." The White House, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/. The President immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries," further solidifying the motivation for additional action was outside the initial Section 301 investigation scope. *Id.*

48.    On September 21, 2018, USTR published notice of the final list of products subject to an additional tariff, a list commonly known as "List 3." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (USTR Sept. 21, 2018). USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. *Id.* USTR determined that the List 3 tariffs would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments that it received nor to any of the testimony provided by roughly 350 witnesses. *Id.*

49.    Notably, in its List 3 notice, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the

subject of such action has increased or decreased." *Id.* (brackets omitted). USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

50.    In the months that followed, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (USTR Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (USTR Mar. 5, 2019).

51.    The trade negotiations ultimately were not successful. In May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (USTR May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also*

*Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (USTR May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. Breaking from normal procedure, USTR did not seek public comment but rather simply announced that the increase would occur. *Id.*

52.    On November 13, 2019, USTR granted exclusions for various products retroactive to September 24, 2018 and effective until August 7, 2020. *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 61,674, 61,675 (USTR Nov. 13, 2019).

53.    The tariffs imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR extended its originally granted exclusions from the List 3 duties. *See, e.g.*, *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (USTR, Aug. 11, 2020).

## B.    List 4

54.    On May 17, 2019, a mere eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with yet another list—List 4—covering even more products subject to additional duties. Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (USTR May 17, 2019). USTR explained that its

decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

55.    Similar to the process it followed for List 3, USTR invited the public to comment on proposed List 4 and participate in a hearing.  *Id.*  The public submitted nearly 3,000 comments.  Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001.  Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing.  *Id.*

56.    On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem.*    @realDonaldTrump,    Twitter    (Aug.    1,    2019,    1:26    PM    EDT), https://twitter.com/realdonaldtrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

57.    On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (USTR Aug. 20, 2019). List 4A would impose a 10% *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019.  *Id.* at 43,304.  List 4B would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other

factors"), effective December 15, 2019.  *Id.* at 43,305.  Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

58.      As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at 43,304.  But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency.  *Id.*

59.      Just ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (USTR Aug. 30, 2019).  USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods."  *Id.* at 45,822.  USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action.  *Id.*

60.      On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional

duties of 15 percent on products of China covered by" List 4B.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (USTR Dec. 18, 2019).  USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (USTR Jan. 22, 2020).

61.    In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019.  Office of the United States Trade Representative, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-and-china-reach.  During that time, Defendants declined to impose additional duties on imports covered by List 4B, presumably because China had agreed to new obligations under the limited trade deal.

62.    The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint.  Although the proposed duties on products covered by List 4B remain suspended, President Trump has continued to threaten to impose them if China does not meet its obligations under their limited trade deal.  *See, e.g.*, @realDonaldTrump, Twitter (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

63.    Since the Section 301 additional duties were imposed, the President and other government officials have made statements that the China tariffs have generated a significant amount of revenue for the U.S. government.  "Billions of dollars are pouring into the coffers of the U.S.A. because of the tariffs being charged China … Otherwise let's just make our country richer than ever.",    Tweet    from    @realDonaldTrump,    Nov.    29,    2018, https://twitter.com/realDonaldTrump/status/1068120444279103488.   Aid to American farmers was paid for by "giving $16 billion out of all the tariffs we're collecting".  "We've gotten tens of billions of dollars in tariffs from China." "The US government is taking in billions and billions of dollars in the form of tariffs from China."  These were statements made by President Trump in July 2019. *See Charles Benson chats one-on-one with President Trump*, Jul. 12, 2019 (https://www.youtube.com/watch?v=xFfsDj9Lhds).

64.    USTR has never explained or provided evidence how the List 3 additional duties were related to the subject of the 301 Investigation: China's policies and practices regarding intellectual property and technology transfer.    The President's and others' statements characterize the List 3 additional duties as generating revenue for the U.S. Treasury.

**STATEMENT OF CLAIMS**

**COUNT ONE**

**(DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)**

65.     Paragraphs 1 through 64 are incorporated by reference.

66.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

67.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4 tariffs.

68.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 and List 4 on any such determination.

69.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017. Further USTR's action giving rise to List 4 occurred in August 2019, two years after the initiation of the underlying investigation.

70.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce

from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war.

71.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *expand* or *increase* tariff actions when they are "no longer appropriate."

72.     Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4 violate the Trade Act and are contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

73.     Paragraphs 1 through 72 are incorporated by reference.

74.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

75.     Defendants exceeded their authority under the Trade Act in promulgating List 3 and List 4A by failing to meet APA's procedural requirements, and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

76.     Defendants failed to offer any evidence for the asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

77.     Defendants also promulgated List 3 and List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.  Defendants' failure to follow APA requirements resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4A whose value equals $200 billion and $120 billion, respectively.

## COUNT THREE

## (VIOLATION OF THE U.S. CONSTITUTION)

78.     Paragraphs 1 through 77 are incorporated by reference.

79.     From statements made by the President and other officials in the Administration, an additional, if not the sole, reason and purpose for the List 3 additional duties was to collect revenue for the federal general treasury.

80.     To the extent the List 3 additional duties were revenue collection measures, they were beyond the scope of actions USTR was authorized to take by the Trade Act of 1974 and, therefore, were unlawful.

81.     To the extent the List 3 additional duties were implemented for the purposes of collecting revenue for the U.S. government, they were unconstitutional, because only Congress has the constitutional power to "lay and collect taxes, duties, imposts and excises". U.S. Constitution, Article 1, Section 8, Clause 1.

## COUNT FOUR

## (VIOLATION OF THE U.S. CONSTITUTION)

82.     Paragraphs 1 through 81 are incorporated by reference.

83.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "No person shall… be deprived of life, liberty, or property, without due process of law."

84.     Defendants promulgated List 3 and 4A in violation of the Due Process Clause when they failed to provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors in making their decisions, and failed to adequately explain their rationale. Defendants' predetermined decision-making resulted in the unlawful imposition of tariffs on imports covered by Lists 3 and 4A whose value equals $500 billion.

\*      \*      \*

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court

(1)    declare that Defendants' actions resulting in tariffs on products covered by List 3 and List 4 are unauthorized by, and contrary to, the Trade Act;

(2)    declare that Defendants arbitrarily and unlawfully promulgated List 3 and List 4 in violation of the APA;

(3)    declare that Defendants unlawfully promulgated List 3 and List 4 in violation of the United States Constitution;

(4)    vacate the List 3 and List 4 rulemaking;

(5)    order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3 and List 4A;

(6)    permanently enjoin Defendants from applying List 3 and List 4 against Plaintiffs and collecting any duties from Plaintiffs pursuant to List 3 and List 4;

(7)    award Plaintiffs their costs and reasonable attorney fees; and

(8)    grant such other and further relief as may be just and proper.

Respectfully submitted,
/s/ Craig A. Lewis
Craig A. Lewis
Jonathan T. Stoel
H. Deen Kaplan
Jared R. Wessel
Chandri Navarro
Nicholas R. Sparks
Nicholas W. Laneville

HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-8613
craig.lewis@hoganlovells.com

*Counsel to BYD America, LLC, BYD Energy
LLC, BYD Coach & Bus LLC, BYD Motors LLC,
and Global Healthcare Product Solutions LLC*

Date: October 9, 2020

# ATTACHMENT 1

**BYD America Imports Subject to List 3 and 4a Tariffs**

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 8504.40.9570 | Inverters | List 3 |
| 8504.40.9580 | Other electrical power supply | List 3 |

**BYD Energy Imports Subject to List 3 and 4a Tariffs**

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 3506990000 | Adhesives | List 3 |
| 3917330000 | Plastic tubes/hoses | List 3 |
| 4016935050 | Rubber gaskets/washers | List 3 |
| 7307995045 | Tube/Pipe Fittings | List 3 |
| 7318152065 | Screws/Bolts | List 3 |
| 7318158069 | Screws/Bolts | List 3 |
| 7318230000 | Rivets | List 3 |
| 8302303060 | Motor vehicle fittings | List 3 |
| 8302306000 | Motor vehicle fittings | List 3 |
| 8471609050 | Input/Output Units | List 3 |
| 8481809050 | Taps, cocks, valves | List 3 |
| 8504409580 | Other electrical power supply | List 3 |
| 8534000095 | Printed Circuits | List 3 |
| 8536698000 | Other Lamp-holders, Plugs, and sockets | List 3 |
| 8544422000 | Electrical conductors | List 3 |
| 8708998180 | Motor vehicle parts | List 3 |
| 9403200081 | Racks/Shelves | List 3 |
| 9405406000 | Electrical Lamps | List 3 |

**BYD Coach & Bus Imports Subject to List 3 and 4a Tariffs**

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 3816000050 | Refractory cements, mortars, concretes and similar compositions | List 3 |

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 3917330000 | Plastic Tubes | List 3 |
| 3917390010 | Plastic Tubes | List 3 |
| 3918901000 | Plastic Floor Covering | List 3 |
| 3923210095 | Plastic Bags | List 3 |
| 4008111000 | Natural rubber sheets | List 3 |
| 4009110000 | Plastic Tubes | List 3 |
| 4009310000 | Plastic Tubes | List 3 |
| 4016100000 | Other articles of rubber | List 3 |
| 4016935050 | Rubber gaskets/washers | List 3 |
| 4016995500 | Rubber vibration control | List 3 |
| 5603110090 | Nonwoven cloth | List 3 |
| 7007110010 | Tempered safety glass | List 3 |
| 7009100000 | Rear-view mirror glass | List 3 |
| 7009921090 | Rear-view mirror glass | List 3 |
| 7009925090 | Rear-view mirror glass | List 3 |
| 7307199080 | Pipe fittings | List 3 |
| 7307290090 | Stainless steel fittings | List 3 |
| 7310210050 | Steel; tanks | List 3 |
| 7318152065 | Steel screws/bolts | List 3 |
| 7318152095 | Steel screws/bolts | List 3 |
| 7318158066 | Steel screws/bolts | List 3 |
| 7318158069 | Steel screws/bolts | List 3 |
| 7318158085 | Steel screws/bolts | List 3 |
| 7318190000 | Steel screws/bolts | List 3 |
| 7318210030 | Washers | List 3 |
| 7318210090 | Washers | List 3 |
| 7318220000 | Washers | List 3 |
| 7318230000 | Rivets | List 3 |
| 7318240000 | Cotters/Pins | List 3 |
| 7318290000 | Non-threaded fastener | List 3 |

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 7320905060 | Springs | List 3 |
| 7326908688 | Other metal articles | List 3 |
| 7415210000 | Washers | List 3 |
| 7419995050 | Copper parts | List 3 |
| 8203204000 | Pliers | List 3 |
| 8301200060 | Locks | List 3 |
| 8302303060 | Vehicle mountings | List 3 |
| 8302500000 | Brackets/Pegs | List 3 |
| 8310000000 | Sign/Plates | List 3 |
| 8412909085 | Engine parts | List 3 |
| 8414596595 | Blowers/fans | List 3 |
| 8414801680 | Air compressors | List 3 |
| 8414809000 | Other compressors | List 3 |
| 8415200000 | Air conditioners | List 3 |
| 8481809040 | Actuators | List 3 |
| 8481809050 | Other actuators | List 3 |
| 8483103010 | Transmission shafts | List 3 |
| 8504407007 | Static converters | List 3 |
| 8504409550 | Rectifiers | List 3 |
| 8504409570 | Inverters | List 3 |
| 8511906040 | Voltage regulators | List 3 |
| 8512202080 | Lighting equipment | List 3 |
| 8512300020 | Sound signaling equipment | List 3 |
| 8512402000 | Defrosters | List 3 |
| 8512404000 | Windshield wipers | List 3 |
| 8512902000 | Parts of signaling equipment | List 3 |
| 8512907000 | Parts of defrosters | List 3 |
| 8516808000 | Electrical heating resisters | List 3 |
| 8525805050 | Cameras | List 3 |
| 8527298000 | Radio Players | List 3 |

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 8528591000 | Monitors | List 3 |
| 8529908600 | Television parts | List 3 |
| 8531200040 | Indicator panels | List 3 |
| 8534000095 | Printed circuits | List 3 |
| 8535400000 | Lighting Resisters | List 3 |
| 8536698000 | Coaxial connectors | List 3 |
| 8537109160 | Electrical switches | List 3 |
| 8537109170 | Electrical switches | List 3 |
| 8544422000 | Electrical conductors | List 3 |
| 8547900010 | Insulating fittings | List 3 |
| 8707905040 | Insulating fittings | List 3 |
| 8708103010 | Bumpers | List 3 |
| 8708106050 | Parts of bumpers | List 3 |
| 8708210000 | Safety belts | List 3 |
| 8708295060 | Brakes | List 3 |
| 8708305030 | Brake rotors | List 3 |
| 8708305040 | Brake linings | List 3 |
| 8708305090 | Brake parts | List 3 |
| 8708405000 | Gear boxes | List 3 |
| 8708505150 | Drive Axels | List 3 |
| 8708506100 | Drive Axels | List 3 |
| 8708706060 | Wheel parts | List 3 |
| 8708915000 | Radiator parts | List 3 |
| 8708925000 | Mufflers | List 3 |
| 8708947550 | Steering parts | List 3 |
| 8708996890 | Other vehicle parts | List 3 |
| 8708998180 | Other vehicle parts | List 3 |
| 9403200090 | Other metal furniture | List 3 |
| 9405406000 | Electrical Lamps | List 3 |
| 9405408440 | Electrical Lights | List 3 |

**BYD Motors Imports Subject to List 3 and 4a Tariffs**

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 3923500000 | Plastic Stoppers | List 3 |
| 3926904590 | Plastic Bushing | List 3 |
| 4008210000 | Rubber Antiskid Sleeve | List 3 |
| 4009110000 | Vulcanized Rubber Pipe (Without | List 3 |
| 4009210000 | Rubber Tubing / Without Attach | List 3 |
| 4009220050 | Rubber Oil Hose /With Fittings | List 3 |
| 4009310000 | Vulcanized Rubber Pipe (Without | List 3 |
| 4016910000 | Rubber Pedal Pad | List 3 |
| 4016931050 | Rubber Stopper | List 3 |
| 4016935050 | Bonded Seal | List 3 |
| 4016996010 | Rubber Cushions | List 3 |
| 4016996050 | Rubber Blanket | List 3 |
| 7009100000 | Rearview Mirror | List 3 |
| 7307290090 | Stainless Steel Pipe Joint | List 3 |
| 7307911000 | Flange | List 3 |
| 7307991000 | Valve Joint | List 3 |
| 7307995015 | Barrel Connector | List 3 |
| 7307995060 | Angle Joint | List 3 |
| 7315120080 | Plate Chain | List 3 |
| 7315900000 | Chain Parts (Connection Sleeve | List 3 |
| 7318141060 | Self-Tapping Screw | List 3 |
| 7318152030 | Bolt | List 3 |
| 7318152065 | Bolt | List 3 |
| 7318152095 | Bolt | List 3 |
| 7318154000 | Screw | List 3 |
| 7318158069 | Bolt | List 3 |
| 7318158082 | Bolt | List 3 |
| 7318158085 | Screw | List 3 |
| 7318190000 | Screw Plug | List 3 |

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 7318210090 | Spring Washer | List 3 |
| 7318220000 | Check The Pine Gasket | List 3 |
| 7318220000 | Gasket | List 3 |
| 7318230000 | Rivet | List 3 |
| 7318240000 | Pin Shaft | List 3 |
| 7318290000 | Circlip | List 3 |
| 7326908688 | Stainless Steel Hoop | List 3 |
| 7403190000 | Copper Row | List 3 |
| 7415210000 | Copper Gasket | List 3 |
| 7419995050 | Brass Bushing | List 3 |
| 8301200060 | Seat Lock | List 3 |
| 8302303060 | Connecting Rod | List 3 |
| 8308906000 | Buckle | List 3 |
| 8412909015 | Hydraulic Cylinder Parts (Cylix | List 3 |
| 8412909085 | Hydraulic Valve | List 3 |
| 8414596540 | Cooling Fan Group | List 3 |
| 8421310000 | Filter | List 3 |
| 8479899465 | Hydraulic Accumulator | List 3 |
| 8479899499 | Gas Spring | List 3 |
| 8481803040 | Priority Valve | List 3 |
| 8481809005 | Electromagnetic Multiplex Reve | List 3 |
| 8481809005 | Solenoid Valve Block | List 3 |
| 8483103010 | Sprocket Shaft | List 3 |
| 8483103050 | Spline Shaft | List 3 |
| 8483105000 | Spline Shaft | List 3 |
| 8483208040 | Bearing Block | List 3 |
| 8483405050 | Reducer | List 3 |
| 8483905090 | Reducer Parts (Brake Fixed Pla | List 3 |
| 8504314065 | Transformer | List 3 |
| 8504407001 | Voltage Converter | List 3 |

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 8504407018 | Charging Adaptor | List 3 |
| 8504409540 | Charging Adaptor | List 3 |
| 8504409550 | Rectifier Module | List 3 |
| 8504409570 | Inverter | List 3 |
| 8504409580 | Power Module | List 3 |
| 8504508000 | Power Inductor | List 3 |
| 8512202080 | Lights | List 3 |
| 8512204080 | Rear Combination Lamp | List 3 |
| 8512300040 | Buzzer | List 3 |
| 8536698000 | Plug | List 3 |
| 8537109120 | Combination Switch | List 3 |
| 8537109160 | Control Motherboard For Charge | List 3 |
| 8537109170 | Low-Voltage Distribution Box | List 3 |
| 8544429090 | Lv Wiring | List 3 |
| 8547200000 | Support Sheath | List 3 |
| 8547900010 | Cable Connector | List 3 |
| 8547900040 | Cable Connector | List 3 |
| 8548900100 | Wave Filter | List 3 |
| 8708915000 | Water Tank Radiator | List 3 |
| 8708998180 | Expansion Tank | List 3 |
| 9401905081 | Plastic Fixed Seat | List 3 |

**Global Healthcare Product Solutions Imports Subject to List 3 and 4a Tariffs**

| HTS Codes | Generic Product Description | Section 301 List |
|---|---|---|
| 6307.90.9845 | Surgical Masks | List 3 |